IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

IN RE                                               : CHAPTER 11
                                                    :
THE WEIGHTMAN GROUP, INC.                           :
                                                    :
                    DEBTOR                          : BANKRUPTCY NO. 04-19163
                                                    :

# OPINION

By:   STEPHEN RASLAVICH, UNITED STATES BANKRUPTCY JUDGE.

*Introduction*

Before the Court is the Objection of the Debtor, with the support of the Creditors' Committee, to the Proof of Claim No. 30 of Bank of America as successor in interest to Fleet Bank (the Bank). The Objection states that the amount of the claim should be reduced because it is "unknown." *See* Objection, Ex. B. A hearing on the Objection was held on May 12, 2005, at which the parties were given the opportunity to present evidence and make oral argument. Thereafter, the matter was taken under advisement. For the reasons set forth below, the Objection will be sustained in part.[1]

*The Stipulated Record*

The parties agree that the Debtor was an advertising agency; that the Bank was one of its clients; that the Debtor arranged for the placement of advertisements for the Bank through various media providers; that these media providers did, in fact, run or place the advertising spots for the Bank; that these media providers were supposed to be paid for their services from the money paid by the Bank to the Debtor (less the

---

[1] As this ruling disallows (in part) a claim against the estate, it is within the Court's core jurisdiction. *See* 28 U.S.C. § 157(b)(2)(B).

Debtor's fee); that at the time of the bankruptcy filing, the Debtor had failed to pay various media providers for almost $680,000 worth of advertising spots placed for the Bank; that such amount has since been reduced to $384,000; that one media provider sued the Bank for unpaid invoices because the Debtor failed to remit payment from the Bank to the provider; that the Bank, in turn, sued the Debtor and certain of its principals on account of that suit; that the Bank settled with that media plaintiff for $86,000; and that the Debtor's principals reimbursed the Bank to the extent of $40,000. *See generally* Transcript (Trans.); Claim #30; Exhibits D-1 through D-3.

*The Parties' Positions*

The Debtor and the Committee maintain that the Bank's claim is limited to $46,000. That is the amount – less reimbursement from the Debtor's principals – that the Bank paid to settle the media providers' claim. Trans. 9. Anything else is a contingent claim of a creditor who is also liable with the Debtor as to the claim of a third party. Such a claim, they argue, must be disallowed under § 502(e)(1)(B). Trans. 12.

The Bank maintains that § 502(e)(1)(B) does not apply for two reasons. First, the Bank argues that it is "directly liable" to the media providers for services provided on its behalf. Second, the Bank insists that its claim against the Debtor is not contingent. *See* Response, ¶¶ 12, 13.

*The Burden of Proof*

Because the record in this case is slim, the allocation of the burden of proof becomes especially important. The Bankruptcy Rules provide that a properly filed claim shifts that burden to the objecting party:

> (f) Evidentiary effect

> A proof of claim *executed and filed in accordance with these rules* shall constitute prima facie evidence of the validity and amount of the claim.

B.R. 3001(f) (emphasis added). "A proof of claim must 'substantially conform to the appropriate official form' in order to benefit from the evidentiary presumption set forth in Fed.R.Bankr.P. 3001(f)." *In re L. Washington & Assoc, Inc.*, 2000 WL 1780329 *3 (Bankr.E.D.Pa.). Thus, for the Bank's claim to enjoy the presumption of validity, it must comport with the following rules:

> (a) Form and content
>
> A proof of claim is a written statement setting forth a creditor's claim. A proof of claim shall conform substantially to the appropriate Official Form.
> …
> (c) Claim based on a writing
>
> When a claim, or an interest in property of the debtor securing the claim, is based on a writing, the original or a duplicate shall be filed with the proof of claim. If the writing has been lost or destroyed, a statement of the circumstances of the loss or destruction shall be filed with the claim.

B.R. 3001(a), (c). Important here is the requirement that the claimant attach any writing that supports the claim. *See* 9 *Collier on Bankruptcy* ¶ 3001.03[1] (Matthew Bender 15th ed. Revised) (stating that language on Official Form 10 requiring a supporting writing is in the "nature of instructions"). Have these requirements been met?

The claim states as its basis "breach of contract and conversion of monies." *See* Claim #30, Box #1. Yet, no contract is attached to the claim.[2] Neither is an explanation

---

[2]The Court specifically asked the Bank's counsel if a copy of the contract was attached to the claim. Trans. 33. The response was no, but that counsel had a copy of it in his file. *Id.*
(continued...)

offered for such omission.[3]  Instead, the Bank attached one document entitled RIDER and another (Exhibit A) which consists of a copy of a Complaint filed by the Bank prepetition against the Debtor and its principals.  Neither, however, demonstrates privity between the Bank and the media providers that would support a finding liability.   Where the RIDER is mere verbiage, Exhibit A consists of nothing more than allegations.  *See* 2 John W. Strong, *McCormick on Evidence* §§ 254 & 257 (5th ed.1999) (effective pleadings in a case constitute binding and conclusive judicial admissions within such case but only nonbinding, nonconclusive evidentiary admissions within other litigation); Barry Russell, *Bankruptcy Evidence Manual* § 801.22 (2002 ed.2001), at 884; *Glick v. White Motor Co.*, 458 F.2d 1287, 1291 (3rd Cir.1972) (*citing State Farm Mutual Automobile Insurance Co. v. Worthington*, 405 F.2d 683, 686 (8th Cir.1968)).  Because the contents of the Complaint are inherently self-serving, it has no probative value.  In sum, the Bank's claim fails to adhere to the rules applicable to self-sustaining claims.  As a result, that claim will not enjoy the presumption of validity that shifts the burden to any party objecting to its allowance.

*Does the Record Otherwise
Demonstrate that the Bank
is Liable to the Media Vendors?*

---

[2](...continued)
However, counsel never formally requested that it be made part of the record.

[3]*See In re MK Lombard Group I, Ltd.*, 301 B.R. 812, 815 (Bankr.E.D.Pa.2003) (denying amended claim from relating back for limitations purposes where the original claim was based on writing but failed to attach it and without an explanation why).

Other than the Complaint attached to the claim, the Bank offered no other evidence. That leaves the Court to look elsewhere in the record to see if the validity of the claim is otherwise demonstrated. All that exists is the testimony of the Debtor's principal, Mr. Goodchild, and three documents identified by him. As to the documents, they consist of lists of unpaid invoices of media providers who ran advertising spots for the Bank. *See* D-1 through D-3; Trans. 20-24. However, nothing in those documents demonstrates a nexus between the Bank and the media providers. They reference one of the Bank's predecessors in interest (Summit) but that is all.

The probative value of Mr. Goodchild's testimony is a somewhat different matter. Although his questioning (for the most part, at least) went to the balance of the unpaid media invoices relating to the Bank, it bears, albeit slightly, on whether the Bank is liable to the media providers:

> Q. Mr. Goodchild, I'm showing you an exhibit which I have marked D-1. Are you familiar with this exhibit?
>
> A. Yes.
>
> Q. And what is it?
>
> A. It is a list of the outstanding – of – it is a list of the outstanding media invoices that are currently on the books of the Weightman Group –
>
> Q. That relate –
>
> A. – for Summit. The bank.
>
> Q. Right. They relate to the bank.
>
> A. Yes.
>
> Q. And the total that you show is 384,000 and change, is that correct?

Case 04-19163-sr   Doc 186   Filed 05/25/05   Entered 05/25/05 14:12:46   Desc Main
Document      Page 6 of 14

A. Yes.

Q. Now, why is that number different than the number of six hundred and, I think, eighty thousand or twenty thousand, whatever you were talking about previously?

A. There was some repaid sum of the media down. We also –

Q. Let me stop you there. So. Weightman itself paid, as it was supposed to, a good bit of the advertising media?

A. Some of it. And –

Q Yes.

A. - - then others were settled in negotiation. And some were settled by the bank in claims that were made to them. That was the number that you were referring to earlier - - 86,000, I think, is the actual number.

Q. The Bank – the bank settled approximately $86,000 worth of claims?

A. Well, they paid 86,000. I'm not sure what the total of the claims might have been

Q. Right. So, 86 was paid in settlement of claims which could have been substantially higher?

A. Could - - could have been.

Q. And Weightman also paid claims which - - in amounts which may have been substantially higher.

A. Yes.

Q. But the net effect of that is that the only claims that remain outstanding as of today are the claims on this list, is that correct?

-6-

> A. These are the claims that - - that exist on the books of the Weightman Group. If they're - - if there are some in here that are included in the 86,000 that the bank has settled claims for, we are not aware of them.
>
> Q. So, it might even be less than this number.
>
> A. Potentially.

Trans. 20-22.  There is one inference that can be made from this testimony.  Although the Bank's payment to the media providers per se is not indicative of liability, $86,000 is a significant sum.  Had the Bank deemed the media provider's action to be groundless, it presumably would have settled it for a nuisance amount.  The amount of the payment indicates that there is some merit to the Bank's claim that it was liable to the media providers.  The Court finds this sufficient to shift the burden of proof to the objectors.

*The Evidence and the
Committee's Arguments
for Disallowance*

At the hearing, the Committee challenged the claim on two grounds.  First, it argued that the amount of the claim was overstated.  And based on Mr. Goodchild's testimony, the Bank would concede that its claim should be reduced to $384,000.  Trans. 29.  The second argument is that the claim should be allowed in the amount of $46,000 and no more.  That is the amount that the Bank paid the media providers – net of reimbursement from the principals – to settle the action that they brought against it.  The Bank's claim for any remaining unpaid media invoices are, the Committee urges, contingent which requires that they be disallowed.  Trans. 12.  The Committee's argument is predicated on Code § 502 which provides, in pertinent part:

> Notwithstanding subsections (a), (b), and (c) of this section and paragraph (2) of this subsection, the court shall disallow any claim for reimbursement or contribution of an entity that is liable with the debtor on or has secured the claim of a creditor, to the extent that–
> …
> (B) such claim for reimbursement or contribution is contingent as of the time of allowance or disallowance of such claim for reimbursement or contribution

11 U.S.C. § 502(e)(1)(B). A leading commentator on bankruptcy explains this provision as follows:

> [S]ection 502(e)(1) is applicable to a debt owed by the debtor to a creditor which has been guaranteed by a third party. If the primary obligee seeks payment from its guarantor, the guarantor may seek reimbursement or contribution from the debtor. Both the primary obligee and the guarantor have a claim against the debtor that arises from the same debt; the primary obligee has a right to payment from the debtor, and the guarantor has a contingent right to reimbursement or contribution from the debtor which may become noncontingent in the event that it fully satisfies the primary obligee's claim. By disallowing the guarantor's contingent claim for reimbursement or contribution, section 502(e)(1)(B) insures that the estate will not be liable to the primary obligor and the guarantor for the same debt.

4 *Collier* ¶ 502.06[2][d]

This provision has generally been construed as requiring three elements: (1) the claim must be one for reimbursement or contribution; (2) the entity asserting the claim must be liable with the debtor on the claim of a creditor; and (3) the claim must be contingent at the time of its allowance or disallowance. *In re Empire Radio Partners, LTD*, 1993 WL 515832 *3 (Bankr.E.D.Pa.); *In re Allegheny Int'l, Inc.*, 126 B.R. 919, 921 (Bankr.W.D.Pa.1991). Does the record establish all three elements?

*Is the Bank's Claim for
Reimbursement or Contribution?*

Pennsylvania law defines liability for contribution as being

> compelled to pay, or is satisfied to hold or to bear, more than his just share of a common burden upon which several persons are equally liable, is entitled to recover from the others who were equally bound to discharge the obligation, their just proportion of the money which was paid on account of the common debt. The doctrine is founded not upon contract but upon the equitable principle that where a number of persons are equally bound to discharge a common burden, it is only just and fair that each of them bears his just proportion of the obligation.

*Branda v. Talinaek*, 1970 WL 9023 **3 (Pa.Com.P.)).  This is the basis for the Bank's claim in this instance.  Predicated on its liability to the media providers, it anticipates being sued by them for the services they provided to it.  When that happens, the Bank will turn to the Debtor for contribution because the Debtor, it claims, converted the money that should have gone to pay the media providers.  Response, ¶ 14.  This establishes that the Bank's claim is one for contribution.

*Is the Bank Liable With
the Debtor on the Media
Provider's Claim?*

The second element which must be established is that the Bank must be "liable with the [D]ebtor on … the claim of the [media providers]." 11 U.S.C. § 502(e)(1)(B). The natural reading of this language demonstrates that Congress intended to disallow claims where the claimant and the debtor are jointly liable to a third party.  *Allegheny*, 126 B.R. at 922.  The legislative history of § 502(e) supports such a reading:

> [Section 502(e)(1)(B)] requires disallowance of the claim for reimbursement or contribution of a co-debtor, surety or guarantor of an obligation of a debtor, unless the claim of the creditor on such obligation has been paid in full. The

-9-

> provision prevents competition between a creditor and his
> guarantor for the limited proceeds in the estate.

S.Rep. No. 95-989, 95th Cong., 2nd Sess. 65 (1978), *reprinted in* 1978 U.S.Code Cong. & Admin.News 5787, 5851; H.R.Rep. No. 95-595, 95th Cong., 1st Sess. 354 (1977), *reprinted in* 1978 U.S.Code Cong. & Admin.News 5963, 6310.  Is the Bank jointly liable with the Debtor as to the media providers' claims?  The Bank maintains that it is not:

> Here, Fleet is not a co-debtor or a guarantor of an obligation
> of the Weightman Group, Inc.  Rather, Fleet faces direct
> liability to the unpaid vendors of advertising services as to
> which Fleet had made payment to the Debtor for payment
> over, but which the Debtor converted to its own use.  Thus,
> Fleet, as the principal is directly and primarily liable to the
> various third party unpaid vendors for the services retained
> on Fleet's behalf through the Debtor.

Response, ¶ 12; *see also* Trans. 5.  The Bank's argument, then, implies that there exist different degrees of liability as between the Bank and Debtor vis-a-vis the media providers.  Where the Bank's liability to these vendors is "direct[ ] and primar[y]," the Debtor's, says the Bank, is secondary.  But the statute does not define liability in terms of gradations.  Essentially, it requires joint liability between the Debtor and the claimant to a common creditor: "liable with the debtor on . . . the claim of a creditor."  And that is what the record shows.  Mr. Goodchild testified credibly that the list of the unpaid invoices identified as Ex. D-1 were "currently on the books of the Debtor."  Trans. 20.  Based on that evidence, the Debtor is just as liable to the vendors as is the Bank.  The record thus establishes joint liability of both the Bank and the Debtor to the media vendors.

*Is the Bank's Claim Contingent?*

The final requirement of § 502(e)(1)(B) is that the claim against the debtor is "contingent at the time of its alllowance or disalllowance." The Bank disputes that its claim is contingent:

> The Weightman Group failed to pay those monies as required and Fleet remains exposed to third parties for one hundred percent of the amounts advanced by Fleet to the Weightman Group. Accordingly, Fleet's claim is not "contingent" within the meaning of 11 U.S.C. § 502(e)(1)(B).

Response, ¶ 13. Does that make the Bank's claim not contingent?

The Third Circuit has cited favorably to a long standing definition of a "contingent claim" in *Matter of M. Frenville Co., Inc.*, 744 F.2d 332, 336 n.7. (3d Cir. 1984):

> Bankruptcy judges have defined a contingent claim as a claim which becomes due only on the occurrence of a future event. *See, e.g., In re Dill*, 30 B.R. 546, 549 (Bankr. 9th Cir.1983). One frequently cited definition of contingent is that "claims are contingent as to liability if the debt is one which the debtor will be called upon to pay only upon the occurrence or happening of an extrinsic event." *In re All Media Properties, Inc.*, 5 B.R. 126, 133 (Bankr.S.D.Tex.1980), *aff'd*, 646 F.2d 193 (5th Cir. (Unit A) 1981) (per curiam).

Thus, in general, a contingent debt is said to exist if the debtor's legal duty to pay, i.e., his or her liability, does not come into existence until triggered by the occurrence of a future event that was reasonably within the presumed contemplation of the parties at the time the original relationship between the parties was created. *In re Groetzinger*, No. 97-18842, Memorandum Opinion and Order, April 16, 19998 (Bankr.E.D.Pa. 1998).

When the Bank paid $86,000 (less $40,000 it was reimbursed) to settle the claims of certain media vendors, that gave rise to a claim against the Debtor reimbursement. It was the Debtor's retaining of money rightfully owing to the vendors

that caused them to sue the Bank. Thus, to the extent of that settlement (less reimbursement), the Bank's claim against the Debtor became noncontingent. However, any additional liability on the Debtor's part to the Bank remains inchoate: the vendors must first proceed against the Bank which, in turn, would look to the Debtor as to the culpable party. That clearly makes the remainder of the Bank's claim against the Debtor contingent.[4]

*Summary*

The Bank's claim will be allowed to the extent of $46,000. The balance will be denied as a contingent claim pursuant to 11 U.S.C. § 502(e)(1)(B).

An appropriate order follows.

BY THE COURT:

STEPHEN RASLAVICH
UNITED STATES BANKRUPTCY JUDGE

Dated: May 24, 2005

---

[4] To rule otherwise would allow the Bank to be paid on its claim although there exists the real possibility that it will not be sued again by the media vendors. Evidence was presented at the hearing that some of the unpaid invoices are quite old. Indeed, some are beyond the applicable statute of limitations for suit. Payment on the Bank's claim to that extent would constitute a windfall for the Bank.

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE | : CHAPTER 11 |
| | : |
| THE WEIGHTMAN GROUP, INC. | : |
| | : |
| DEBTOR | : BANKRUPTCY NO. 04-19163 |
| | : |

# ORDER

**AND NOW**, upon consideration of the Debtor's Objection to Proof of Claim No. 30 of Bank of America and Fleet Bank, the Response thereto, after a hearing, and for the reasons set forth in the attached Opinion, it is

**ORDERED** that the Objection is sustained in part.  Claim No. 30 shall be allowed in the amount of $46,000 as a general unsecured claim.

BY THE COURT,

DATED: MAY 25, 2005

STEPHEN RASLAVICH,
UNITED STATES BANKRUPTCY JUDGE

MAILING LIST:

George P. Conway, III, Esquire
Office of the U.S. Trustee
950W Curtis Center
7th & Sansom Streets
Philadelphia, PA 19106

Gerald J. McConomy, Esquire
KNAPP MCCONOMY MERLIE LLP
1216 Route 113
P.O. Box 487
Chester Springs, PA 19425

John D. O'Toole, Esquire
WILSON ELSER MOSKOWITZ
EDELMAN & DICKER
33 Washington Street
Newark, NJ 07102-3017

Alan R. Gordon, Esquire
PELINO & LENTZ, P.C.
One Liberty Place
32nd Floor
1650 Market Street
Philadelphia, PA 19103-7393